UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOEL COMER,**<br>    Plaintiff,<br>vs.<br>**SHEPARD INSURANCE GROUP, INC. AND DOES 1-10,**<br>    Defendants. | CASE NO. 4:20-cv-04881-YGR<br><br>**ORDER GRANTING MOTION TO REMAND**<br>Re: Dkt. No. 11 |

Plaintiff Joel Comer brings this action against his insurance broker, defendant Shepard Insurance Group ("SIG"), seeking damages for professional negligence and negligent misrepresentation for failure to obtain requested property damage coverage. (Dkt. No. 1, Notice of Removal ["NOR"], at Exh. 1 ["Compl."] ¶¶ 16, 21.) Comer originally filed his complaint in the Superior Court of California, County of Marin, on June 1, 2020. (NOR ¶ 1.) On July 21, 2020, SIG removed the action to this Court, asserting both diversity jurisdiction and federal question jurisdiction. (NOR ¶¶ 5-10.)

Now before the Court is Comer's motion to remand. (Dkt. No. 11.) Having carefully considered the pleadings and the papers submitted, the admissible evidence, and for the reasons set forth more fully below, the Court hereby **GRANTS** Comer's motion to remand.

**I.   BACKGROUND**

   **A.   Allegations of the Complaint**

In July of 2017, Comer purchased real property in Bodega Bay, California ("the Sonoma Ranch property"). (Compl. ¶ 2.) He contacted his long-time insurance broker, SIG, located in Connecticut. SIG had obtained insurance for Comer's residential properties for many years when Comer lived in Connecticut and after he moved to Northern California. (*Id*. at ¶ 5.) When he

purchased the Sonoma Ranch property, Comer requested that SIG obtain coverage similar to his Marin County residence. (*Id*. at ¶ 7.) At the time, Comer's primary residence in Marin County was insured through a policy issued by Chubb & Son, Inc. ("Chubb"), procured by SIG. (*Id*.) Comer alleges that SIG never informed him that the policy procured for the Sonoma Ranch property was only liability coverage, not property damage coverage. (*Id*.)

Comer alleges "[i]n May 2019, a windstorm caused a tree to strike a barn on the Sonoma Ranch property, causing structural damages to the barn as well as several vehicles located inside it." (*Id*. at ¶ 8.) Shortly thereafter, Comer reported the claim to SIG and began forwarding invoices for repairs. (*Id*. at ¶ 9.) SIG then advised Comer that the Chubb policy (insuring both the Marin County primary residence and the Sonoma Ranch property) did not include *property* coverage for the Sonoma Ranch property. (*Id*.) As a result, damage to the barn and other losses were uninsured. (*Id*.)

After prelitigation communications between Comer and representatives of SIG, as well as between Comer's counsel and SIG's Errors & Omissions (E&O) Insurance counsel, Comer filed his complaint for professional negligence and negligent misrepresentation on June 1, 2020. The complaint alleges that SIG "owed a duty to affirmatively explain in writing to plaintiff that the Chubb policy endorsement it obtained for the Sonoma [R]anch property, did not provide any property coverage for fire or other physical damages to the structures on that property." (Compl. at ¶ 15.) The complaint further alleges Comer suffered damages "in an amount to be proven at trial," but does not specify any amounts demanded. (*Id*. at ¶¶ 16, 21.)

**B.     Allegations of the NOR**

The NOR states that Comer's complaint seeks relief based on SIG's failure to provide coverage for property damage including "coverage for fire or other physical damage to the structures on the property." (NOR ¶ 10, citing Compl. ¶ 15.) SIG contends that the Sonoma Ranch property was declined coverage due to wildfire exposure and because "federal fire mapping" precluded coverage. (NOR ¶ 10.) The NOR states that "[t]he fire mapping directly involves a federal question tied to the legislative scheme under the U.S. Dept. of Agriculture," though it cites no federal statute or regulations concerning such fire mapping. (*Id*.)

2

With respect to the amount in controversy ("AIC") requirement, the NOR provides only that the "complaint alleges damages in excess of the amount in controversy requirement based on plaintiff's original demand, and the allegations in the complaint and prayer." (NOR ¶ 5.)

## II.  LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is a "strong presumption against removal jurisdiction" when evaluating a motion to remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation omitted). The party seeking removal "has the burden to prove, by a preponderance of the evidence, that removal is proper." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-7 (9th Cir. 2010). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## III.  ANALYSIS

SIG removed the action to this Court on two grounds. First, SIG argues that because coverage for Comer's property was precluded by federal fire mapping this case involves a federal question under 28 U.S.C. section 1331. (NOR at ¶ 10.) Second, SIG contends the Court has diversity jurisdiction under 28 U.S.C. section 1332 because there is complete diversity of citizenship and the AIC involves more than $75,000. (NOR at 2-3.) Comer counters that federal question jurisdiction fails because the complaint does not arise under any federal law, and diversity jurisdiction cannot be established since the AIC does not exceed the jurisdictional threshold. The Court considers each basis for removal jurisdiction in turn.

### A.  Federal Question Jurisdiction

A district court has federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Removal jurisdiction based upon a federal question is determined from the complaint as it existed at the time of removal. *Libhart*, 592 F.2d at 1065. "A case aris[es] under federal law . . . if a well-pleaded complaint

1  establishes either that federal law creates the cause of action or that the plaintiff's right to relief
2  necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice*
3  *Assurance v. McVeigh*, 547 U.S. 677, 689-90 (2006) (internal quotations and citation omitted).  In
4  the absence of a claim based on federal law, a substantial federal question exists where: (1) the state
5  law claim necessarily raises a federal issue that is actually disputed; (2) the federal interest in the
6  issue is substantial; and (3) the exercise of federal jurisdiction will not disturb "any congressionally
7  approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc.*
8  *v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).  With rare exceptions, "a case may *not* be
9  removed to federal court on the basis of a federal defense, including the defense of pre-emption,
10 even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that
11 the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386,
12 393 (1987) (emphasis in original).

13 Given that Comer's complaint does not raise any federal claim, the Court need only evaluate
14 whether Comer's "right to relief necessarily depends on resolution of a substantial question of
15 federal law." *See Empire*, 547 U.S. at 690.  SIG bases its assertion of federal question jurisdiction
16 on the contention that federal fire mapping "tied to the legislative scheme under the U.S. Dept. of
17 Agriculture" precluded coverage for the Sonoma Ranch property such that SIG cannot be liable for
18 failing to obtain the coverage. (NOR ¶ 10.)

19 SIG does not persuade.  SIG does not provide any relevant authority or cite to any federal
20 statute either in its NOR or its briefing.  Indeed, in its opposition to the instant motion, SIG only
21 alludes to the *California* Government Code as a source of the asserted fire mapping coverage
22 exclusion.  (*See* Oppo. at 18.)  Moreover, even under a generous reading of SIG's arguments here,
23 the most it asserts is a defense arising from an unspecified provision of federal law, which is wholly
24 insufficient to establish federal question jurisdiction. *Caterpillar*, 482 U.S. 393 (removal cannot be
25 based on a federal defense); *see also Empire*, 547 U.S. at 701 ("it takes more than a federal element"
26 to establish federal question jurisdiction).[1]  Accordingly, SIG has failed to meet its burden that the

---

[1] In fact, Comer presented evidence on reply that SIG subsequently obtained insurance on the Sonoma property as of July 31, 2019, belying its claim that federal laws prevented coverage.

4

1   complaint raises a substantial question of federal law necessary for federal question jurisdiction
2   under 28 U.S.C. section 1331.

### B. Diversity Jurisdiction

SIG next asserts federal jurisdiction based upon diversity under 28 U.S.C. section 1332. District courts have jurisdiction over actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000 "exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. If it is unclear from the face of the complaint whether the amount in controversy is met, the removing party "bears the burden of establishing that the amount in controversy exceeds the jurisdictional threshold by a preponderance of the evidence." *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (internal quotations and citations omitted). Courts may "consider facts in the removal petition" as well as "summary-judgment-type evidence" relevant to the controversy. *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal quotations omitted). The amount in controversy includes attorney fees if authorized under fee-shifting statutes or by contract. *See Gonzales v. CarMax Auto Superstores, LCC*, 840 F.3d 644, 648-49 (9th Cir. 2016) (concerning statutory fees); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy").

In the instant case, the parties agree that there is complete diversity of citizenship. Comer is a California citizen and SIG a citizen of Connecticut, its principal place of business. (*See* NOR at ¶¶ 6, 7.) The parties disagree on whether the AIC threshold is met. Because the complaint does not specify the amount of damages sought, the Court may examine the allegations of the notice of

---

(*See* Comer Decl., Dkt. No. 14-2, ¶ 3, Exh. A.)

1  removal and the relevant evidence the parties have submitted.  *See Singer*, 116 F.3d at 377.[2]

2  Prior to filing in state court, on December 2, 2019, Comer's counsel served a demand letter claiming the total loss was $65,000 excluding interest and attorneys' fees, for the "cost of repair of the barn structure, as well [as] a vintage Landrover vehicle in the barn declared a total loss." (Courteau Decl., Dkt. No. 12-1, Exh. 7 at 2-4.)[3]  In February 2020, in communications with SIG's insurance carrier, Comer offered to settle the claim against SIG for $54,154.07, waiving statutory pre-judgment interest, represented to be 10%.  (Glaessner Decl., Dkt. No. 11-1, Exh. A.)  Utica Mutual, SIG's Errors & Omissions (E&O) insurer, countered at $17,872.85.  (Glaessner Decl., Exh. B.)  Receipts Comer provided SIG for repair costs track Comer's settlement demands.  The receipts included: $38,352.56 and $5,593.97 for barn repairs; $3,208.04 for a Honda dirt bike repair; and $7,000 for tree removal.  (*See* Courteau Decl., Exhs. 2, 3, 6; Supp. Glaessner Decl., Dkt. No. 14-1, Exh. V.)  The total for these items is $54,154.57.  Thus, Comer's pre-litigation demand letters and receipts establish that the AIC did not exceed the jurisdictional threshold.  "A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).

SIG submits a potpourri of email communications between Comer and brokers at SIG, as well as receipts, invoices, estimates, and emails with car dealerships, in an effort to suggest that all the items mentioned therein are potential damage elements here.  The crux of SIG's argument is an email string between Comer and SIG between May 20 and 23, 2019.  (*See* Courteau Decl., Exhs. 10-11.)  SIG characterizes the emails as the "original demand" and contends they show that Comer's damages actually exceed $195,000 for repairs to real and personal property plus $700,000 for failure

---

[2] The Court notes that the sufficiency of the notice of removal's allegations is questionable. While a removing party need not submit evidence with its removal, the notice must comply with Federal Rule of Civil Procedure 8(a) and include a short and plain statement for the grounds of removal.  *See Dart*, 574 U.S. at 84, 87 (2014).  SIG's notice of removal offered little more than conclusions.  Nevertheless, the Court reaches its decision on the merits of the motion.

[3] The Court notes that the declaration of Diana L. Gil Courteau purports to authenticate various emails, invoices, policy excerpts and estimates based on her personal knowledge without any apparent basis for doing so.  (*See* Courteau Decl., Exh. 1-12.)  It also redacts certain information from one of those documents without explanation or request for sealing the redacted information.  (*Id.*, Exh. 4.)  While the admissibility of many of these documents is doubtful, the Court has nevertheless taken them into account in its ruling herein given the procedural posture.

to provide insurance for improvements on the land and for personal property. The Court does not find SIG's characterization of the documents convincing.

The May 20, 2019 email was sent directly from Comer, a non-attorney, to Patrick Joyce at SIG shortly after the windstorm incident. Comer stated:

> Patrick, I'd like to discuss this issue ASAP. I'm astounded having learned that NONE of my structures have been insured according to the policy you reviewed last week. This is highly unusual, especially given the amount of insurance I carry on my other property, cars, etc. *I have invested more than $700,000 of additional monies into this property since purchasing it* and had NO IDEA that the only coverage we had was for liability. What research are you doing on your end and what are next steps. I have a tractor storage barn that was just upgraded in the spring of 2018 (I have all of the work orders/invoices etc.) that has a 6 foot hole downt [*sic*] the middle and in dire need of repair. Please advise.

(*See* Courteau Decl., Exh. 11, emphasis supplied.) In response, Mr. Joyce said:

> Good morning Joel,
>
> I agree that this is highly unusual as the insurance on your other properties is very comprehensive. Kate's notes indicated that the existing structures on the property were a chicken coop and a horse barn, so no property coverage was needed, and that you were planning on building something later on. As a result, there is no structure coverage, but if you could forward me the orders/invoices you have. I am speaking with Chubb to see if there is anything they may be able to do.
>
> In the meantime, *I think we need to get our hands around what structures there are on the property, what have you built since purchase, and what we should be insuring?* We are a bit caught off guard that you have put more than $700,000 into the property and we don't have documentation on what you built/rebuilt.

(*Id*. at Exh. 10, emphasis supplied.) Comer's response to this inquiry about "getting our hands around" the structures on the property listed details about the structures and other items on the Sonoma Ranch property, including:

> A tractor in that barn which was purchased new last year for 65K, 2 Kawasaki utility Mules, one costing 11k and the other costing 6k. The 6k unit was damaged as well, and I've already dropped that one off at the dealer. In addition , a 70K newly installed solar system and entirely new water system that cast [*sic*] roughly 75k to update. Further, I'll need to increase the $ amount coverage on my 1959 Porsche. They are trading at much higher values at this point. . . .

(*Id.*) The email went on to describe damage to a "classic Landrover" as well. (*Id.*)

SIG's characterization of all these items as potential damages in this action simply misstates the communication when viewed in context. Comer's email was a response to an inquiry from SIG about all the improvements and personal property on the Sonoma Ranch that he needed insured. In

7

1   other words, it responds to SIG's question about what *other* structures exist on the property for
2   purposes of future coverage. It is not an itemization of losses resulting from the windstorm incident
3   in which a tree fell on *one* of the structures. Similarly, Comer's email mentions his vintage Porsche
4   in the context of requesting additional coverage in the future, not as an item of property damaged by
5   the windstorm. Moreover, even though the Land Rover was one of the items damaged by the
6   windstorm, SIG misleads when it includes the cost of that damage in this litigation since the Land
7   Rover's damage *was covered* (and paid out) under a separate Chubb vehicle policy, in place at the
8   time of the windstorm, that SIG had obtained for Comer. (*See* Courteau Decl., Exh 5 [Chubb
9   Coverage Summary effective 4/18/17]; Comer Decl. ¶ 2 [Land Rover claim was paid by Chubb].)
10  Comer confirms in his declaration that only two vehicles were damaged by the fallen tree – the Land
11  Rover and a Honda motorbike" and the Land Rover damage claim was paid and not at issue in this
12  litigation. (Comer Decl., ¶ 2.) While he listed the tractor, Kawasaki utility mules, and Porsche as
13  items located at the Sonoma Ranch property, Comer states that they were not damaged in the
14  windstorm and he seeks no damages in this lawsuit for them. (*Id.*)[4] SIG cannot reach the AIC
15  threshold merely by adding up the *value* of all underinsured property listed in the May 2019 emails
16  in the absence of any claim that Comer suffered a *loss* to that property arising from SIG's
17  professional negligence.
18      Moreover, Comer's alleged damages from pre-removal through post-removal negotiations
19  with SIG's counsel have not changed substantially. Comer offered to stipulate that his damages,
20  "known or unknown," and any subsequently discovered claim, did not involve more than $75,000.
21  (Glaessner Decl., Exh. P.) While the Supreme Court "has long discouraged reliance on post-removal
22  stipulations" because "such statements are likely to manipulate the amount in controversy to secure
23  jurisdiction in a desired court," here there are no reasonable grounds to doubt Comer's post-removal
24  statements. *See Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1033 (N.D. Cal. 2002).

---

[4] SIG submits an email dated May 23, 2019, in which Comer references a Kawasaki mule that was undergoing repairs after the windstorm. (*See* Courteau Decl., Exh. 8.) SIG included the full "6k" value of the mule, as stated in Comer's May 21, 2019 email, in its AIC calculation. Even if SIG's documents were credited over Comer's disavowal of any damages arising from the Kawasaki, an addition of $6,000 still would not put the total over the jurisdictional threshold.

1         In addition, SIG does not attempt to show that attorney fees should be included in the AIC
2 calculation. Attorney fees are excluded from the amount in controversy unless such fees are
3 provided by contract or by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir.
4 1998). Defendants have the burden of proving attorney's fees as part of the amount in controversy.
5 *Fritsch v. Swift Transp. Co. of Arizona, LCC*, 899 F.3d 785, 795 (9th Cir. 2018). Here, SIG suggests
6 that attorney fees would not be recoverable at all.

7         Finally, SIG argues that Comer uses "vague" assertions about pre-judgment interest to "hide"
8 greater damages. When the court sits in diversity jurisdiction, prejudgment interest is governed by
9 state law. *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 714 (9th Cir. 1992) (citation omitted).
10 Thus, the amount of prejudgment interest is prescribed by statute and not a plausible means of
11 "hiding" additional claims for damages. Regardless, 28 U.S.C. section 1332 plainly states that the
12 amount in controversy is "*exclusive of* interests and costs[.]" 28 U.S.C. § 1332 (emphasis added).

13         In sum, although there is complete diversity of citizenship, SIG has failed to meet its burden
14 that the AIC exceeds $75,000 necessary for diversity jurisdiction under 28 U.S.C. section 1332.

15    **C.    Plaintiff's Request for Attorneys' Fees For Unreasonable Removal**

16         In seeking remand, Comer also requests an award of attorneys' fees pursuant to 28 U.S.C.
17 section 1447(c). Comer argues the removal lacked any reasonable basis. Further, Comer contends
18 that counsel spent two weeks engaging in efforts to resolve the issue by stipulation, only to have a
19 tentative agreement fall apart based on SIG's assertions that Comer was hiding damages in his
20 assertion of prejudgment interest and that it wanted to preserve its federal law defense. Comer seeks
21 an award of $1,787.50 for the time incurred on the motion and negotiations.

22         Courts have discretion to award "just costs and any actual expenses, including attorney fees,
23 incurred as a result of the removal." 28 U.S.C. section 1447(c). "Absent unusual circumstances,
24 courts may award attorney's fees under section 1447(c) only where the removing party lacked an
25 objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132,
26 141 (2005). "Removal is not objectively unreasonably solely because the removing party's
27 arguments lack merit, or else attorney's fees would always be awarded whenever remand is
28 granted." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 552 (9th Cir. 2018)

(internal quotations and citation omitted).  Here, although the Court finds SIG's removal unsupported, it does not rise to the level of objectively unreasonable.  Accordingly, Comer's request for attorneys' fees incurred as a result of removal is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's motion to remand.[5]  The Clerk of the Court is **DIRECTED** to remand this action to the Superior Court of California, County of Marin.

This Order terminates Docket Number 11.

**IT IS SO ORDERED.**

Dated: November 4, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[5] In reply, Comer argues the Court should remand the action for the further reason that SIG's counsel was not admitted to practice in this district at the time of the removal.  In an unauthorized surreply, SIG's counsel indicates that, once of aware of her error, she submitted her application for admission on September 8, 2020.  Because the Court finds that it is without jurisdiction and remand must be ordered, it does not reach the issue of counsel's failure to ensure she was admitted in this district.  Comer's objection to the unauthorized surreply (Dkt. No. 16) is **OVERRULED**.